### SANDRA ANN WALSH *v.* PETER A. WALSH
### (10901)

PETERS, HEALEY, PARSKEY, GRILLO and COVELLO, Js.

Argued March 2—decision released May 17, 1983

*Leslie Byelas,* with whom was *Ann Finnie,* legal intern, for the appellant (defendant).

*Howard C. Kaplan,* with whom was *Carolyn Richter,* for the appellee (plaintiff).

GRILLO, J. The factual background leading to this appeal by the defendant is as follows: On March 8, 1979, the marriage of the parties was dissolved. A stipulation approved by the court was incorporated into the dissolution decree.[1] That judgment specified that "it is adjudged that the marriage of the parties to this action be and it is hereby dissolved and they are each hereby declared to be single and unmarried and the following stipulation between the parties was approved by the Court without prejudice to either party reopening the matter in the future. 1. Wife shall pay the Husband $510.00 per month while they reside in the same apartment. 2. Husband shall pay for all food, rent, utilities, transportation, medical and hospital costs not covered by insurance, and college expenses of the children of the parties. 3. Wife shall provide Blue Cross and Blue Shield for herself and the children of the parties."

On May 11, 1981, the plaintiff moved to modify the judgment. The court, *Melville, J.,* modified the judgment, ordering the defendant to pay weekly alimony of $92.50.

The issues on which the defendant predicates his appeal are as follows: (1) Whether the trial court erred in granting a motion for modification and in awarding alimony when no award of alimony was made at the time of the dissolution of the marriage; (2) Whether the court erred in awarding alimony without a showing of an unforeseen substantial change in circumstances and without a full evaluation of the statutory criteria of General Statutes §§ 46b-81 (c) and

---

[1] The defendant chose not to appear at the hearing and was unrepresented. He filed no financial statement. The Honorable Archibald H. Tunick, state referee, presided.

46b-86; (3) Whether the court abused its discretion by failing to hear testimony and by substituting its subjective opinion for facts shown in the evidence.

The primary thrust of the defendant's appeal revolves around the first issue. Noting that the word "alimony" was not included in the stipulation or judgment, and in the absence of a "formally posed" previous grant or denial of alimony, the defendant contends that the duties imposed upon him by the dissolution decree cannot be construed as an award of alimony, and further that the decree renders the matter res judicata. He reasons, citing *Brown* v. *Brown,* 29 Conn. Sup. 507, 294 A.2d 339 (1972), and *Maxwell* v. *Maxwell,* 11 Conn. Sup. 205 (1942), that there was "nothing to modify." We disagree.

The orders approved by the court in the dissolution decree, albeit based on a stipulation, are unorthodox. Since the court prepared no written memorandum of decision and announced its decision orally from the bench at the close of the hearing, and because the portion of the transcript containing the basis of its decision and the character of the duties placed on each party does not appear in the record, we have consulted the transcript of the testimony at the hearing for further elucidation. *Noce* v. *Noce,* 181 Conn. 145, 147, 434 A.2d 345 (1980). The parties were to live under the same roof but not as "husband and wife." The apartment was rented. The parties have two children, at the time of the decree aged eighteen and twenty and both in college. The parties' purpose in living together was financial—to enable the children to stay in college. The parties decided this living arrangement would be economically prudent. It would continue until the defendant could make other plans since he, an assistant college dean, "hoped" for a promotion to dean and an increase in salary.

Moreover, the defendant acknowledges that the parties continued to live in the same residence after the dissolution in order to share expenses and thereby effect savings so as to provide an education for their two adult children. That purpose of the agreement has been accomplished, and now the parties are residing in different apartments, he in New York, she in Stamford.

It was in recognition of the temporary and conditional nature of the arrangement set out in the stipulation that the court entered its orders with the qualification "without prejudice to either party reopening said Judgment in the future . . . ." Even had the parties not agreed to the "without prejudice" provision, the court, sua sponte, would have been justified in reserving final judgment in view of the conditional and temporary living arrangements and the unclear *total* financial status of the defendant. See *Ross* v. *Ross,* 172 Conn. 269, 271–73, 374 A.2d 185 (1977). The defendant asserts that the orders set forth in the decree are res judicata since the phrase "without prejudice to either party" does not refer to the judgment. The short answer to this claim is that the sentence preliminary to the specific orders and which specified that the orders are "without prejudice" *is itself* part of the judgment.

The defendant interprets the "without prejudice" clause as pertaining to the possibility of modifying the stated provisions prior to the children's finishing their schooling and prior to the parties' obtaining separate living quarters. There is no indication either in the evidence or in the judgment supportive of this proposition.

"[W]here a judgment is stated to be without prejudice as to certain specified matters, it does not operate as res judicata upon matters within the terms of the sav·

ing clause, but does conclude all matters not within these terms." 46 Am. Jur. 2d, Judgments § 489. "The effect of a denial of a motion or application 'without prejudice' will often prevent that ruling from becoming *res judicata* upon its merits and leave the matter open for further presentation and consideration in the same or another proceeding." *Varanelli* v. *Luddy,* 130 Conn. 74, 80, 32 A.2d 61 (1943).

A judgment "without prejudice" may be rendered in those situations where there is some reasonable ground for a conclusion that the issues should not be finally decided on the existing situation. *Bright* v. *Zoning Board of Appeals,* 149 Conn. 698, 704, 183 A.2d 603 (1962).

Since the situation confronting the parties was in flux, the obvious meaning to be accorded the judgment of the court is that when the financial, residential and employment status of the parties came into focus, the orders were subject to future potential modification without the res judicata restraints ordinarily embodied in monetary judgments. See *Cocco* v. *Cocco,* 166 Conn. 37, 40-41, 347 A.2d 72 (1974).

While the parties offer considerable authority in their respective arguments as to whether the stipulated financial orders are in the nature of alimony, and, if so, whether the plaintiff sustained her burden of demonstrating "a substantial and unforeseen change in the circumstances"; *Hardisty* v. *Hardisty,* 183 Conn. 253, 257, 439 A.2d 307 (1981); as a prerequisite to alimony modification, our conclusion with respect to the "without prejudice" provision makes it unnecessary for us to address these issues. The original financial awards incorporated in the dissolution decree were temporary in nature and were to remain in effect until the parties' financial and living arrangements became

settled, at which time either party "without prejudice" could request the trial court to render a permanent order of alimony. Although the plaintiff requested alimony in her complaint, the temporary financial arrangements as set forth above were not conducive to an award of "alimony" in the ordinary sense of the term, i.e., direct monetary payments from the husband to the wife. Hence, "the trial court retained jurisdiction over the financial matters to a date after the issuance of the dissolution decree." *Ross* v. *Ross,* supra, 273.[2]

As the trial court entered the first permanent order of alimony in the "modification" hearing below, it was required to consider the criteria set forth in General Statutes § 46b-82. Our review of this record reveals that it did. The length of the marriage, the occupation of the parties, employability factors and future earning potential were all addressed by counsel and the court. Moreover, the court had a detailed financial statement from each party, which it considered.[3] The court could reasonably conclude as it did.

The defendant's final claim is that the court erred in failing to hear evidence since that procedure was an essential prerequisite to a consideration of the relevant criteria.

---

[2] We hasten to add, however, that our holding is limited to the unique circumstances of the present case. Our conclusion should not be construed as varying the established prerequisites to alimony modification, or as a relaxation of the res judicata restraints ordinarily attaching to monetary awards rendered as part of a dissolution decree. The decision extends solely to those rare situations which demonstrate conclusively that the trial court retained jurisdiction over a temporary financial arrangement. These factors were unequivocally manifest in the present case given the factual background, as well as by the court's having annexed to its order the "without prejudice" provision.

[3] At the time of the modification hearing, the defendant, now in the banking field, was earning approximately $35,000 per year. His assets, including $15,033 in bank accounts, totaled $17,733 as against liabilities of $7706.

The plaintiff, a secretary, earned $265 a week at the time of the modification hearing. Her total assets amount to $650, while her liabilities total $1700.

Neither party offered testimony, and neither party objected to or took exception to the lack of testimony. Both parties obviously acquiesced in proceeding by argument as to facts relating to the record and financial affidavits. The bulk of the arguments of counsel related to financial matters, and the financial statements were in evidence. Both parties, in their briefs, use the word "hearing" in describing the proceedings. Moreover, while defense counsel was arguing, the court inquired of counsel, "[y]ou want to present any evidence . . . ." To this query counsel did not reply, nor did he or counsel for the plaintiff make any attempt to present evidence.

If counsel has full knowledge of improper conduct (or what he perceives to be improper procedure) he cannot remain silent, hoping for a favorable ruling, and then be heard to complain when the order is unsatisfactory. See Holden & Daly, Conn. Evidence § 12. It remains counsel's responsibility "for full and fair disclosure, for a searching dialogue, about all of the facts that materially affect the client's rights and interests." *Monroe v. Monroe,* 177 Conn. 173, 183, 413 A.2d 819, appeal dismissed, 444 U.S. 801, 100 S. Ct. 20, 62 L. Ed. 2d 14 (1979). In rendering its judgment, the trial court may properly rely upon such representations by counsel. Id.

There is no error.

In this opinion the other judges concurred.