[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON CT Page 9344 MOTION FOR ORDER RE: SALE OF PROPERTY AND MOTION RE: SALE OF HOUSE AND DETERMINATION OF BASIS (DOCKET ENTRIES NUMBERED 147 AND 149)
The plaintiff has moved for an order for sale of the Remsenberg, Long Island, New York property of the parties at a price of $1,650,000.00 to adjust the division of the proceeds so that the defendant will receive $900,000.00. The defendant has moved that the plaintiff convey his half share of the property to her by a tax free transfer with the plaintiff receiving the same net amount that he would realize by a sale to a third party assuming his share of the gross proceeds at $750,000.00.
On September 14, 1988, this court ordered that the property owned by the parties "located at Cedar Lane, Remsenberg, Long Island, shall be listed for sale for $2,200,000.00. All fix-up expenses in preparation for the sale shall be agreed upon by the parties." The court, on page 8 of its Memorandum of Decision stated as follows:
 From the gross sales proceeds, the following shall be deducted: all closing costs including real estate commissions and New York real estate taxes incurred in connection with the sale, repayment of the fix-up costs to the plaintiff and the plumbing bill of Mr. Mapes. The net proceeds shall be divided fifty (50%) per cent to the plaintiff and fifty (50%) per cent to the defendant.
 Any offer within ten (10%) per cent of the listing price or $1,800,000.00 or above, must be accepted by the parties. If any offer is received that is less than ten (10%) per cent of the listing price but does not equal at least $1,800,000.00 and the parties cannot agree, the determination of whether the property shall be sold shall be determined by this court. Further, this court shall resolve any dispute with respect to a reduction in the listing price, or fix-up item, or any other dispute concerning CT Page 9345 the sale of said property in the event the parties cannot agree. (Emphasis supplied.)
 Both parties shall cooperate fully with respect to the sale of the property including keeping the premises clean and available for inspection. The defendant shall be responsible for all utility expenses and ordinary repairs during the months of September and October. Thereafter, the parties shall share such expenses equally. If the property has not been sold by April 1, 1989, the defendant shall again have exclusive possession of the property for the months of April through October and again be responsible for utility expenses and ordinary repairs during such period.
It is the underlined portion of the court's orders with which the motions before the court are concerned. Plaintiff's motion seeks an order for a sale of the property for $1,650,000.00, the defendant to receive $900,000.00 from which the expenses of sale would be applied. The plaintiff points to that portion of the judgment which provides that any offer within ten (10%) per cent of the listing price, i.e. $1,800,000.00, must be accepted by the parties and, since the defendant would receive $900,000.00 (one half of $1,800,000.00), his motion should be granted.
Defendant, on the other hand, seeks the property for herself. She argues that, since the court retained jurisdiction to resolve any disputes concerning the sale of the property, the court can and should order the plaintiff to transfer his interest in the property and the defendant then pay him the net amount he would realize were the property sold to those who have made the offer of $1,650,000.00 where he would receive the gross amount of $750,000.00. Defendant is prepared to pay $563,000.00 for the plaintiff's interest in the property.
Plaintiff argues that the judgment provided only for a sale of the property and not for the purchase by either party of the other party's interest in the property. The plaintiff argues that this disposition was a division of the parties' property pursuant to 46b-81 of the General Statutes and that CT Page 9346 the judgment cannot now be changed, altered or modified since it is a 46b-81 transfer. The defendant, however, citing the case of Ross v. Ross, 172 Conn. 269 (1977) maintains that the court retained jurisdiction on "any other dispute concerning the sale of said property" so that it has the jurisdiction to order the sale or transfer of the plaintiff's interest to the defendant.
The Ross case, however, is distinguishable. In that case the judgment and the memorandum of decision both expressly reserved jurisdiction on the issues of custody and finances to a subsequent hearing. Here there is not that clear reservation except to resolve disputes concerning reduction of the selling price, fix-up items or "any other dispute concerning the sale of said property." (Emphasis supplied.) It seems clear that the court reserved jurisdiction regarding the "sale" of said property and not a redistribution of the assets of the parties.
The parties have received an offer for purchase of the property for $1,650,000.00 (see plaintiff's exhibit A). There are no conditions except for a "satisfactory contract of sale with customary closing adjustments." The plaintiff desires to accept this offer and is willing that he receive a gross of $750,000.00 thus giving up $75,000.00 of his share so that the defendant might receive a gross of $900,000.00.
It is, of course, obvious that the parties are unable to agree. They are unable to agree because the plaintiff does not wish the defendant to own the property and, also, he does not wish her to have the property by his largesse. The court recalls that both parties loved this property. The plaintiff wishes to get "out from under" for his share of the property expenses and for that reason is willing to "make up the difference" by giving up $75,000.00 of his share for the defendant to receive $900,000.00.
On May 27, 1992, the court (Karazin, J.) determined the value of the property to be $1,850,000.00. While the offer made to the parties is $200,000.00 less than the value of the property found by Judge Karazin, by reason of the plaintiff's willingness to allow $900,000.00 to the defendant, the amount for the defendant falls within the original parameters of the amounts set by the court in 1988.
The court, when it rendered its decision in 1988, had in mind the emotional attachment to this property by each of the CT Page 9347 parties. It was in true Solomonesque fashion that the court ordered the property sold. The court intended that neither party should be the winner or the loser with respect to this property and intended to sever all ties to the property. It is now four years since judgment was entered in this matter, and during all of this period, there has been disagreement between the parties regarding various aspects of this property. It has meant four years of taxes, insurance and "fix-up expenses" for the parties. With the current offer, the parties have an opportunity to sell the property, and with the plaintiff's agreement that $75,000.00 of his share of the proceeds may be paid to the defendant, the defendant realizes what the court contemplated she should receive at a minimum for her interest in the property.
The court grants plaintiff's motion and orders that the offer of the Robert A. Fippingers for purchase of the property for $1,650,000.00 be accepted, that the plaintiff receive $750,000.00 from the sale proceeds less a brokerage commission computed on $750,000.00 less 75/165ths of the closing costs and expenses of sale; and that the defendant receive $900,000.00 from the sale proceeds less a brokerage commission computer on $900,000.00 less 90/165ths of the other closing costs and expenses of sale.
The defendant's motion regarding sale and determination of basis is denied.
EDGAR W. BASSICK, III, JUDGE